Cuma, per
Colcock, J.
From the view which is presented to us of this case, we are first to determine, whether there are any grounds for an appeal from the late decree of Chancellor Thompson, at the sitting in Orange-burg, in January 1825. '
It appears that this case was first heard by Chancellor Galliabd, in September 1822, who made a decree thereon, from which decree an appeal was taken to the Court of Appeals in Equity, at their sitting in December 1822, which Court entered into the consideration of all the matters and things presented by the pleadings of the parties, and made a full and final decree thereon, referring it to the Commissioner to ascertain the amount of the demands of the complainants, and the amount of the commissions received by the trustees of Colonel William Thomson for their services, which commissions were to be refunded by them, and to constitute a fund, so far as it would go, out of which to pay the complainant’s demands : ordering and decreeing that the said' demands should be paid, so soon as. the Commissioner’s report was confirmed. At the last sitting of the Court of Equity, at Orangeburg, this report was made. No exceptions to it were taken; and the Chancellor proceeded to order and decree a confirmation of the said report; observing “that the other parts of the case had been adjudicated.” No arguments were used, nor authority adduced, to shew that the Chancellor had the power to enlarge or modify the decree made by the Appeal Court. Nor indeed can any conce‘ved; for, if he had the power to alter, in the smallest particular, the decree, the same power .would *29 have authorized him to reverse it entirely; which would involve a manifest absurdity. The Chancellor, under the circumstances, could have made no other decree than that that which he has made; and had no power, if it had been necessary, to alter the decree of the Appeal Court. This appeal is therefore dismissed.
Bills of re-Xco* very of new haTcomefe?1 íh? kno5: ledffe ot tile party after the of the^auseT' ?nd for error jq tli© decree itself, being a.Mil of review will lie in England, of the House6 of Lords.
The next subject for the consideration of the Court is, whether the petition for a bill of review shall be granted? And had it been as well understood at the commencement, as it was at the conclusion, of the argument that this application had been rejected by the Court of Appeals of Equity, the argument would not have been heard. But it was contended that the motion was not refused, because argument was not heard on the application for the bill of review. A refusal to hear the argument was a refusal to grant the motion: so the Court refused to hear the argument, because they had solemnly determined the point in the case of Burn v. Poaug, 3 Desaus. Rep. 610. But, in effect, argument was heard, as will appear by a reference to the case in the Constitutional Reports, Tread. Ed. On the argument of the motion to be heard, the counsel went into all the grounds which have now been presented. This Court consider the point as settled, and have no disposition to disturb the decision, being well satisfied that it is a judicious decision, and in furtherance of the views of the legislature, in the organization of that Court, and well calculated to remove some of the most serious and well founded obiec- ■ *■* tions to the exercise of the Chancery jurisdiction. In England bills of review are granted for two causes — 1st. The discovery of new matter, which had come to the " knowledge of the party, after the determination of the cause. 2d. For error in the decree itself, which must be error in law. And it is, at least, doubtful in Eng- ° land, whether a bill of review would be granted, after an affirmance of a decree by the House of Lords. It is certainly the usual course of the Court to refuse them.
Bills of review, it seems, will lie in this slate for the same causes that they are allowed in England.
While it is of the utmost importance that proper tribunals of justice should be established in every well regulated community for the determination of the rights of its citizens, it is of still greater importance that a speedy determination.of those rights should be had. The delay of justice is often a denial and, in some cases, worse than a denial of justice. Interest reipublicee ut sit finis Utium has grown into a maxim; and in the frequent discussions which have taken place, as well in this state as elsewhere, on the propriety or necessity of this jurisdiction, it has always been urged as one objection to it, that it is attended with enormous expenses and great delay. And why, it might be asked, should greater opportunities be offered to parties litigant in this Court to prosecute their rights than are offered to them in other Courts *? The manner of conducting the business of the Court by reference to the subordinate officers of the Court affords facilities not to be met with in other Courts; and as to the determination of principles, why should more time be allowed in one Court than in another. An appeal in England being attended with an expense which few can bear, a rehearing or review may be necessary. But here the Court of Appeals is accessible to all and, in the exercise of its legitimate powers, can and does answer all the beneficial purposes which can arise from bills of review for error in the decree; for we are not to be understood as saying that a bill of review for newly discovered evidence (subject to all the conditions and regulations prescribed on those occasions) may not be granted; as, it appears, was done by the Court of Appeals of Equity in the case of Lang and Perkins(1).
*31 A further view of the subject was presented to the Court by the counsel for the appellants. He contended that although a bill of review may not be had in the case of a final decree by the Court of Appeals of Equity, yet that this was only an interlocutory decree, and consequently subject to review. A brief review of the matter submitted to the Court, and their decree, will shew that the decree is final.
But it is not necessary to determine this point more than any other in the casej for the whole matter was before the Court of Appeals as before observed, and the motion was refused by them, which is enough for this Court. I cannot forbear, however, a single remark on the authorities referred to by the counsel in support of his position. The first case, Smith v. Eyles, 2 Atk. *32 Rep. 384, was an attempt to make a decree to account so bu final as to take preference to a judgment. The mar-§inal note is> “ a decree quod computet makes no variation as to an executor; for before a final decree he may confess judgment, and it does not at all alter the nature Qf die demand.” In the argument of the counsel, it is put on the footing of a mutual account between the parties; and so the Chancellor considers it. He begins by saying “ he thought the question settled, but that he finds ingenious men make distinctions, where the thing itself will not admit, of them.” And he.concludes that, in such-cases of account, the words that “ each party do pay” do amount to a final decree; but have been properly compared to interlocutory judgments. - The next is the of Perry and Philips, 10 Yes. 34, (which was a'reference of mutual accounts) is not final. And in that case the Chancellor also puts it on that footing; and the counsel Mr Romilly properly observes, that execution could not be taken out without some, further order. Now in this case, there is nothing to prevent the parties from taking out their executions for the amount of their demands, as ascertained by the Commissioner, against the property pointed out as liable for them.
A decretal tion may be

The motion is dismissed.

 Perkins v. Lang, ( Columbia, 12 December 1818.)
Chancellor Galliard. “ This case brings before the Court the question whether, under our present system, a Bill of review will lie ? The act *31 of 1808 declares that the decrees of the Court of Appeals shall be final and conclusive, and it would be manifestly contrary to its intention to allow bills of review for error on the face of them; and it would also involve this inconsistency, that after a case has been solemnly determined by this Court in the last resort, a single Judge on the Circuit might cause this decision to be again brought into question. This cannot be. The Court, on a former occasion, has said that, on fresh application, it would correct any gross errors or mistakes in a decree, obvious on a mere statement, when the correction can be made consistently with the principles of the decree itself. Under our former equity system bills of review lay.. The act of 1808 is silent respecting them, and there is nothing either in its words or spirit to deprive this Court of its power to grant them, on the discovery of new matter, made since the decree, which matter the party applying for the bill could not ha ve the benefit of in the first instance; making a. new case, and one proper for equity jurisdiction. The application in this case is of this description; and I think the Circuit Judge was right in over ruling the demurrer. It is therefore ordered and adjudged that the decree of the Circuit Court be affirmed.
“ Chancellors De Saussure, Waties and James concurred.”
In a subsequent cáse Ex parte John R. Murrell, Mr Green of Georgetown presented a petition to the late Appeal Court in Equity at Columbia, May Term 1824, for leave to filejybill of review. I find the following entry on the docket by the Court: “"The petition neither granted nor refused; but Mr Green left to pursue his own course by bill of review in the Circuit Court.”